NESS PLLC
Eliyahu Ness (Bar No. 311054)
eness@nesslegal.com
12100 Wilshire Blvd.
Suite 800
Los Angeles, CA 90025
(213) 294-4322

Attorneys for Plaintiff
D&O TRADECO INC.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| D&O TRADECO INC.<br><br>Plaintiff,<br><br>v.<br><br>GENERATIONS IRREVOCABLE TRUST, CHARLESTON WAY IRREVOCABLE TRUST, GREGORY J. LORBER, DALE WATERS, LEE HIRSCH, GENERATIONS RE VENTURES LLC, VT USA LLC, BAGG LLC, GWEN D. LORBER, and DOES 1-10,<br><br>Defendants. | Case No. 2:24-cv-07961-SPG-JCx<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO MODIFY CASE SCHEDULING ORDER; MEMORNADUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>[Filed/Lodged Concurrently with: Declaration of Eliyahu Ness; Proposed Order]<br><br>Hrg. Date: August 20, 2025<br>Hrg. Time: 1:30 p.m.<br>Coutroom: 5C |

1   TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF REC-

2   ORD:

3   PLEASE TAKE NOTICE that on August 20, 2025, at 1:30 p.m., or as soon

4   thereafter as the matter may be heard in Courtroom 5C of the United States District

5   Court for the Central District of California, Western Division, located at 350 West

6   First Street, Los Angeles, CA 90012, Plaintiff D&O TradeCo Inc. ("D&O") will

7   and hereby does move for an order modifying the current Civil Pretrial Schedule

8   and Trial Order (ECF No. 69) and Schedule of Pretrial and Trial Dates Worksheet

9   (ECF No. 69-1), to extend each date by approximately 90 days, as set forth in the

10  accompanying Proposed Order.

11  This Motion is made pursuant to Federal Rule of Civil Procedure 16(b)(4)

12  and Paragraph 4 of this Court's Judge's Procedures which permit modification of a

13  scheduling order for good cause. Good cause exists here due to Defendants' refusal

14  to participate in discovery for more than four months on the basis of a state court

15  stay that they claimed precluded participation, despite agreeing to the operative

16  Scheduling Order in this case; despite not seeking a stay from this Court; and despite

17  the state court ultimately clarifying that it did not intend to impact discovery in this

18  action. As a result of that obstruction, Plaintiff has still been unable to obtain foun-

19  dational discovery—including from Gredale, the non-party at the center of the asset-

20  stripping scheme alleged and, consequently, cannot possibly meet the current dead-

21  lines.

22  This Motion is based on this Notice of Motion and Motion, the attached

23  Memorandum of Points and Authorities, the concurrently filed Declaration of Eli-

24  yahu Ness and all attached exhibits, all records on file in this action, and any other

25  matters the Court may consider.

26  Dated: July 20, 2025                    Respectfully submitted,

27                                          NESS PLLC

28                                          *s/ Eliyahu Ness*
                                            _____

2

Eliyahu Ness (SBN 311054)
eness@nesslegal.com
12100 Wilshire Blvd., Ste 800
Los Angeles, CA 90025
(213) 294-4322
*Counsel for Plaintiff D&O TradeCo,*
*Inc.*

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7-3, this Motion is made more than seven days following conference between counsel that was intended to eliminate the necessity for this motion or a hearing, as set forth in the accompanying Declaration of Eliyahu Ness and exhibits thereto.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................... 1

II.     BACKGROUND ........................................................................................ 2

   A.  D&O's Claims and Procedural Background ................................... 2

   B.  Superior Court Proceeding Against Gredale and State Court Stay ............... 3

   C.  Defendants Use State Court Stay to Stonewall Discovery. ........................ 4

   D.  Defendants Continue to Evade Discovery Even After Renewed Motion to
       Vacate is Denied .......................................................................... 7

   E.  Other Discovery Remains Pending. ................................................. 9

III.    ARGUMENT ........................................................................................... 10

   A.  The Legal Standard ...................................................................... 10

   B.  There is good cause for a 90-day extension. ................................... 10

      1.  D&O committed to a schedule based on Defendants' representations and
          diligently worked to meet the schedule. .................................. 11

      2.  Any claim of prejudice is belied by Defendants' agreement in principle to
          the 90-day extension ........................................................... 15

      3.  Trial is not imminent. ........................................................... 15

      4.  An approximate 90-day extension of each pretrial deadline is necessary to
          enable full and fair presentation of the claims. ......................... 15

IV.     CONCLUSION ....................................................................................... 16

i

# TABLE OF AUTHORITIES

**Cases**

*City of Pomona v. SQM N. Am. Corp.*,
866 F.3d 1060 (9th Cir. 2017) ..................................................................10

*McCoy v. Southwest Airlines Co.*
211 F.R.D. 381(C.D. Cal. 2002)................................................................12

*Mountain Pride Farms, Inc. v. Dow Chem. Co.*
95 F.R.D. 400, 403 (S.D.N.Y. 1982)........................................................13

*Oasis Med., Inc. v. I-Med Pharma USA Inc.*
No. 2:21-CV-08879-SPG-AGR
2024 WL 3550380 (C.D. Cal. Feb. 8, 2024) ...........................................10

*Welter v. Hurt*
No. 2:23-CV-02627-SPG-MAR
2024 WL 5317266 (C.D. Cal. Nov. 6, 2024) ....................................10, 16

**Rules**

Fed. R. Civ. P. 16(b)(4) ............................................................................10

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O MOTION TO MODIFY SCHEDULING ORDER

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff D&O TradeCo Inc. ("D&O") respectfully moves to extend all case deadlines by approximately 90 days to account for Defendants' protracted refusal to engage in discovery. For more than four months, Defendants—and the non-party Gredale LLC, which they control—stonewalled discovery efforts based solely on a post-judgment stay issued in a separate state court proceeding. That stay, entered in connection with Gredale's repeated and unsuccessful attempts to vacate a default judgment, was never extended to this federal action, nor did Defendants seek leave from this Court to impose any such limitation. Yet they invoked it unilaterally, effectively halting discovery on core issues central to D&O's claims.

The discovery at issue lies at the heart of this case: evidence of asset transfers, intercompany dealings, sham instruments, and the continued operation of Gredale's business through alter ego and successor entities controlled by the same individuals and trusts. After sustained meet-and-confer efforts and a targeted request for clarification in the state court, it was not until after July 11, 2025—when the Superior Court confirmed that its stay did not affect this case—that Defendants relented. Only then, on July 18, did they finally commit to begin producing responsive documents (which has not happened yet). But they declined to stipulate to any modification of the schedule their own conduct had rendered unworkable.

D&O has acted diligently and with restraint throughout. It refrained from immediate motion practice in favor of seeking voluntary compliance and clarification from the state court which, it believed, could moot Defendants' objections and ultimately conserve party and judicial resources. The relief now sought is modest, justified, and proportionate. Without it, D&O cannot fairly complete discovery, assess whether further parties must be joined, or prepare expert analyses necessary for trial.

This is the first such request made in this action. Every relevant consideration under Rule 16 weighs in favor of the extension. The Court should grant the motion.

## II. BACKGROUND

**A.    D&O's Claims and Procedural Background**

D&O filed its original Complaint on September 18, 2024. ECF No. 1. Defendants filed their Answer to the original Complaint on November 12, 2024. ECF. No. 42.

On December 3, 2024, D&O filed a First Amended Complaint. ECF No. 49. Defendants filed their Answer to the FAC on January 1, 2025. In Plaintiff's First Amended Complaint ("FAC"), Plaintiff, a judgment creditor of non-party Gredale LLC ("Gredale"), has asserted nine claims arising from a scheme by Defendants, which include Gredale's controllers, alter egos and successors, to strip Gredale's assets, leaving it a judgment-proof and insolvent shell, while continuing to operate Gredale's substantial apparel manufacturing, importing, warehousing and distribution business through various successor entities, including Defendants VT USA and Bagg. D&O brings causes of action under the Uniform Voidable Transactions Act, California Civil Code § 3439, et seq.  ("UVTA"), as well as to corollary causes of action, including cancellation of written instruments pursuant to California Civil Code section 3412, alter ego liability and successor liability.

Although Gredale is not a named party, Gredale's members are Defendants Generations Irrevocable Trust ("Generations Trust"), Charleston Way Irrevocable Trust ("Charleston Trust"), and Dale Waters ("Waters"). Gredale and all of the entity defendants named herein are controlled by Defendant Gregory Lorber ("Lorber"),[1] the primary orchestrator of the alleged scheme with the assistance of Defendant Lee Hirsch ("Hirsch") who serves as a COO/CFO for the various entities.

Waters is a member of Gredale, participated in the scheme, and presently lives in real property that was fraudulently transferred by Gredale to Defendant Generations RE Ventures (the "Dona Rosa Property"). Lorber controls Gredale, and

---

[1] Defendant Gwen Lorber is Gregory Lorber's wife. She is alleged to have participated in the recording of a sham lien on the Dona Rosa Property with her as the named lienor. For brevity and clarity Lorber will be referred to as "Lorber" and Ms. Lorber will be referred to as "Gwen Lorber."

2

Defendants VT USA and Bagg LLC through his asset-protection trusts, Generations Trust and Charleston Trust, which are members of Gredale, VT USA and Bagg. All of the foregoing entities operate out of a 140,000 square foot facility that Gredale leases at 1735 S. Santa Fe Ave., Los Angeles, CA 90021.

On January 10, 2025, D&O filed a Notice of Dismissal of Defendants EUHC Holdings, LLC and Scott Feiwell. ECF No. 57. The dismissal was without prejudice. ECF No. 59. The purpose of the dismissal was to conduct additional discovery regarding these defendants and their involvement in the fraudulent transfers at issue in this case and avoid motion practice, with the expectation that after additional discovery from Defendants and Gredale, they might be re-joined as defendants. Ness Decl. ¶ 3; ECF No. 64.

On February 10, 2025, the Court entered the operative Civil Pretrial Schedule and Trial Order (ECF No. 69) (the "Scheduling Order"). The Scheduling Order sets trial for February 3, 2026; the deadline to hear a motion to amend pleadings or add parties on July 30, 2025; fact discovery cut-off on September 12, 2025; initial expert disclosures on September 26, 2025; and the last day to hear motions on October 24, 2025. ECF No. 69-1.

**B.    <u>Superior Court Proceeding Against Gredale and State Court Stay</u>**

D&O's judgment against Gredale was obtained in *D&O TradeCo Inc. v. Gredale, LLC*, Case No. 23STCV01749, in Los Angeles Superior Court (the "State Proceeding"). That case arose after Gredale fraudulently induced D&O into a settlement agreement in a prior lawsuit related to the storage of D&O's personal protective equipment ("PPE") merchandise being stored in Gredale's facility and then proceeded to liquidated almost $10.0 million worth of D&O's property for its own accounts. After failing to pay its attorneys in the State Proceeding, withdrawal of that counsel, and subsequent entry of default, the Court entered default judgment against Gredale on February 16, 2024 for $10,775,157.82.

In the State Proceeding, Gredale filed its first motion to set aside the default and vacate the default judgment on August 12, 2024. Ness Decl., Ex. 1 (Docket Sheet). This motion was filed after the six-month statutory deadline for moving to set aside a default under California rules. On November 6, 2024, Gredale filed an Amended Motion to Vacate Default Judgment and Restore Answer requesting that the default be set aside on equitable grounds. *Id.* A hearing on that motion was held on December 4, 2024, and on December 5, 2024, the Superior Court denied the motion. *See id.*

On January 3, 2025, Gredale filed a Renewed Motion to Vacate Default Judgment and Restore Answer ("Renewed Motion to Vacate"), and a hearing was set for April 15, 2025. *Id.* At the same time, Gredale applied *ex parte* to stay judgment enforcement and post-judgment discovery. Ness Decl. ¶ 5, Ex. 2. The court granted that application. *Id.* In the ruling on the *ex parte* application, the court held that "the Court hereby stays any post-judgment financial discovery, including the 1/10/25 debtor's exam, until the Court rules on the subject motion." *Id.*

**C.**  <u>**Defendants Use State Court Stay to Stonewall Discovery**</u>

In the parties' Joint 26(f) Report filed with this Court on January 31, 2025, ECF No. 64, Defendants suggested that they thought "discovery into the finances of all Defendants, and of Gredale, LLC should be delayed until after the Superior Court's decision [on Gredale's Renewed Motion to Vacate] on April 15 2025, in order to respect the Superior Court's stay," *id.* at 8-9. Notwithstanding that vague suggestion, at no point have Defendants filed a motion or made any other request of this Court to stay discovery in this case. In fact, when D&O's counsel agreed to a rapid case schedule with Defendants, which was mostly adopted by this Court, the assumption was that Defendants would be participating fully in discovery unless and until they requested a stay from this Court. Ness Decl. ¶ 6. As it turns out, that assumption was incorrect.

On February 17, 2025, a week after the Scheduling Order in this case was issued, D&O served Gredale with a Subpoena to Produce Documents (the "Gredale Subpoena"). Ness Decl. ¶ 7, Ex. 3. The documents sought by the Gredale Subpoena were foundational—designed to identify the asset transfers at issue, as well as evidence relating to inter-affiliate transfers, the identifies of Gredale-affiliated entities operating from Gredale's headquarters, the identity of potential witnesses (including current and/or former employees of Gredale), and information regarding the alleged sham instruments and fraudulent transfers at issue, including documents sufficient to show any and all consideration that Gredale claims its received in connection with transfer of the Dona Rosa Property. *Id.*

On February 21, 2025, D&O served Gredale with deposition notices for Defendants Lorber, Waters and Hirsch, to occur later in March. *Id.* ¶ 8. The plan was to examine these witnesses regarding the documents expected to be received from Gredale, with the goal of developing targeted requests for additional discovery on Defendants. *Id.*

On March 4, 2025, Gredale's counsel (the same counsel as Defendants herein, Michael Newhouse ("Newhouse")) sent D&O's counsel Objections to Subpoena to Produce Documents to Third Party Gredale, LLC, which contained a single, blanket objection to the Gredale Subpoena, asserting that the Gredale Subpoena "is an improper attempt to discover post judgment financial information from third party GREDALE LLC in this case – in violation of the State Court stay" and that "[t]his Court should not allow such an end run." *Id.* ¶ 9, Ex. 4. No other objections were interposed on the grounds of, e.g., relevance, privilege, overbreadth, vagueness, or anything else. *Id.*

On March 5, 2025, D&O's counsel Eli Ness ("Ness") emailed Newhouse, asking to meet and confer. Ness stated his concern that D&O would not have time to receive documents prior to the depositions that were set to take place later in March. *Id.*, Ex. 5. Newhouse responded that not only would D&O not receive

1  documents about which to examine these witnesses, but he planned to instruct the
2  witnesses not to answer "financial related questions" unless and until Gredale
3  "lose[s] the Motion to Set Aside the Default Judgment." *Id.* Given that the objec-
4  tions to the Gredale Subpoena made clear that Defendants were interpreting "finan-
5  cial related questions" to encompass every topic relevant to this case, as indicated
6  by Gredale's blanket objection to the Gredale Subpoena, D&O understood
7  Newhouse's representation to mean that the witnesses would effectively be in-
8  structed not to answer ***any*** material questions.

9      Newhouse further stated that "[t]here is no urgency in the nascent Federal
10 Court Action, the Motion to Vacate [in the State Proceeding] will be heard on April
11 15th" and that "you have absolutely nothing to lose by waiting an extra month to
12 seek documents and take your depositions." *Id.* Newhouse further stated that "we
13 have long contended that the Federal Court Action must be stayed if we win the
14 Motion to Vacate." *Id.*

15     On the same day, Ness responded that "if you wanted a stay, that issue should
16 have been submitted to [this] Court for consideration in the context of issuing a
17 scheduling order. But it wasn't, and the Court has set a schedule for discovery which
18 is ongoing." Ness emphasized that Newhouse was "effectively unilaterally deciding
19 that discovery in this case is stayed without any authorization from ***this*** Court." *Id.*

20     After a phone call on March 5, 2025, between Ness and Newhouse, where
21 Newhouse reiterated that Defendants' witnesses would be instructed not to answer
22 questions that Newhouse deemed an "end-run" around the state court stay and that
23 no documents would be produced, D&O decided to wait—as Newhouse insisted—
24 until a resolution of the April 15, 2025, hearing on the Renewed Motion to Vacate.
25 D&O believed this course of action might result in a more efficient resolution than
26 burdening this Court with a motion to compel, especially given Newhouse's repre-
27 sentation that D&O would receive documents and depositions promptly after a

28

1   denial of Gredale's Renewed Motion to Vacate which, at that point, was just over a

2   month away. *Id.* ¶¶ 11-12.

3   **D.    Defendants Continue to Evade Discovery Even After Renewed Motion
        to Vacate is Denied.**

4

5          After a hearing on April 15, 2025, the Superior Court denied Gredale's Re-

    newed Motion to Vacate on April 21, 2025. Ness Decl. ¶ 13, Ex. 6.

6

7          On the same day the Superior Court denied Gredale's Renewed Motion to

8   Vacate Ness emailed Newhouse, stating that "[g]iven that the state court stay was

    the only basis for Gredale's objection to D&O's subpoena (attached), and given that

9
    the stay is no longer in effect, can you please let me know when Gredale will pro-
10
    duce the subpoenaed documents?" Ness Decl., Ex. 7. Newhouse's response was
11
    "we will be filing a second renewed motion to vacate, and will be going in *ex parte*
12
    to: 1) again advance the hearing date to the soonest date possible … and 2) continue
13
    the stay through the ruling on the second renewed motion." *Id.*
14

15         Although this was plainly improper and inconsistent with Newhouse's prior

16  representation that discovery would be produced after a denial on the Renewed Mo-

    tion to Vacate, and was obviously grounds for a motion to compel in this Court,
17
    D&O believed that obtaining a clarification from the Superior Court of the scope of
18
    any stay would either prevent a continued dispute in this case (by removing Defend-
19
    ants/Gredale's sole basis for continued obstruction) or, at a minimum, would benefit
20
    an adjudication of this issue before this Court. D&O expected that Gredale's filing
21
    would be done promptly (given that Newhouse said Gredale would be seeking *ex*
22
    *parte* relief). However, over two months elapsed without any filing and without any
23
    documents from Gredale.
24

25         On June 30, 2025, D&O formally began the motion to compel process under

26  L.R. 37-1, sending a meet and confer letter regarding the Gredale Subpoena which

    made clear D&O's position that discovery in this case must proceed irrespective of
27

28

any prior or subsequent stay in the State Proceedings. Ness Decl. ¶ 16. On July 1, 2025, D&O served requests for production on each Defendant. *Id.* ¶ 17.

On July 10, 2025, Gredale filed an *Ex Parte* Application with the Superior Court to shorten the time for a hearing on a *Second* Renewed Motion to Vacate and for a stay on judgment enforcement and post-judgment discovery. On the same day, D&O filed a partial opposition to that Application solely to request that the Superior Court include clarifying language that the stay was not intended to affect discovery in the federal case. Such clarifying language, D&O argued, was necessary because of the way Gredale and the Defendants have relied on the stay of post-judgment discovery in the State Proceedings to evade discovery this this case (as described below).

A hearing on the *ex parte* application was held on July 11, 2025.

On July 11, 2025, the Court issued the requested stay and included the following clarifying language, consistent with D&O's request:

> [T]he Court clarifies that, by its ruling on this ex parte in the State court action, it does not intend to impact one way or the other how the federal court rules on any discovery in that matter.

Ness Decl., Ex. 8.

On July 11, 2025, the same day the state court issued its order on the *ex parte* application, the parties met and conferred regarding discovery in this case. Ness Decl. ¶ 20. Remarkably, despite the Superior Court's clarifying language, Newhouse continued to maintain that neither Gredale nor the parties would be producing documents that they deemed to be an "end run" around the state court stay. Ness reiterated D&O's position that all of the material sought was independently discoverable, and also made clear (in a follow up email) that since Gredale's objection was based entirely on an assumption regarding D&O's purported "end run" motive, and no other objections such as to relevance, overbreadth, or any other

1  grounds had been interposed, Gredale had waived any objection as to that might
2  have been asserted earlier. *See* Ness Decl., Exs. 4, 7.

3       On the same meet and confer call on July 11, 2025, and in light of Defend-
4  ants/Gredale's evasive tactics; the fact that Defendants had requested that D&O de-
5  fer from discovery until the Superior Court ruled on its Renewed Motion to Vacate;
6  the fact that, despite losing that motion, Defendants continued to refuse documents;
7  and the fact that threshold discovery issues would need to be resolved by this Court
8  before this case could materially progress, D&O requested that Defendants agree to
9  a modest 90-day extension of case deadlines.

10      On July 14, 2025, Defendants indicated that they would agree to a 90-day
11  extension but only if D&O would agree to stay all "financial related discovery in
12  the Federal Case." *Id.* D&O refused what it viewed as an improper and unworkable
13  limitation, especially given the expansive interpretation of "financial related dis-
14  covery" Defendants had taken, and took the position that this Court must weigh in
15  on the issue as soon as possible. *Id.*

16      After additional back and forth correspondence between counsel regarding
17  the issue of discoverability and Defendants' assertion that they would seek a stay in
18  this case (*id.*), on July 18, 2025, Newhouse indicated that, notwithstanding over four
19  months of stonewalling, Gredale would finally produce all responsive documents in
20  its possession, custody and control. *Id.* Newhouse nonetheless indicated that De-
21  fendants would ***not*** agree to a modification of the scheduling order. *Id.* Regarding
22  the other pending discovery, Newhouse stated that he had not yet evaluated whether
23  Defendants would continue to assert the Superior Court stay as an objection or, in-
24  stead, produce responsive documents. *Id.*

25  **E.    Other Discovery Remains Pending.**

26      In addition to the discovery on Defendants and Gredale for which no docu-
27  ments or other information has been produced yet, D&O has also served document
28  subpoenas on Hilldun Corporation, Macy's, Inc. and Belk, Inc., and a testimony

subpoena on a former Gredale employee and potential witness Keeahna Cervantes
(recently discovered through investigation of public sources), and intends to serve
additional discovery after it receives and has a chance to review the documents re-
ceived from Defendants/Gredale. Ness Decl. ¶ 22.

### III.   ARGUMENT

**A.   <u>The Legal Standard</u>**

Pretrial scheduling orders may be modified for "good cause." Fed. R. Civ. P.
16(b)(4). "'Good cause is a non-rigorous standard that has been construed broadly
across procedural and statutory contexts.'" *Oasis Med., Inc. v. I-Med Pharma USA
Inc.*, No. 2:21-CV-08879-SPG-AGR, 2024 WL 3550380, at *2 (C.D. Cal. Feb. 8,
2024) (Garnett, J.) (quoting *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259
(9th Cir. 2010)). "The "good cause" analysis weighs a variety of factors, including:

> 1) whether trial is imminent, 2) whether the request is
> opposed, 3) whether the non-moving party would be
> prejudiced, 4) whether the moving party was diligent in
> obtaining discovery within the guidelines established by
> the court, 5) the foreseeability of the need for additional
> discovery in light of the time allowed for discovery by
> the district court, and 6) the likelihood that the discovery
> will lead to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (citation
omitted).

"While no one factor is necessarily dispositive, the Ninth Circuit has in-
structed that the primary focus should be on whether the party seeking to reopen
discovery has acted diligently." *Oasis Medical*, 2024 WL 3550380, at *2 (internal
quotation marks and citation omitted).

**B.   <u>There is good cause for a 90-day extension.</u>**

In *Welter v. Hurt*, No. 2:23-CV-02627-SPG-MAR, 2024 WL 5317266, at *2
(C.D. Cal. Nov. 6, 2024), this Court found good cause to extend deadlines by ap-
proximately 90 days where the record indicated that the defendants had failed to

participate in discovery and that "[i]f close of discovery remains as currently sched-uled, Plaintiffs [would] be deprived of the opportunity to fully conduct the discov-ery to which they are entitled under Rule 26, and their ability to file dispositive and other motions, not to mention prepare for trial, [would] similarly be impaired." *Id.*, at *2.

Likewise here, good cause supports an approximate 90-day extension of deadlines because of D&O's diligent but unreciprocated efforts to progress this case; Defendants' role in causing the need for the extension through its lack of candor in preparing a proposed case schedule that failed to take account of Defendants' position that the state-court stay allowed Defendants to avoid their discovery obligations; the fact that it will be impossible to prepare this case for a full and fair adjudication without a modified case schedule; and the fact that this is the first request for a modification of the scheduling order by any party in this case.

### 1. D&O committed to a schedule based on Defendants' representations and diligently worked to meet the schedule.

As demonstrated in the record in support of this Motion, D&O made diligent attempts as soon as a discovery schedule was set to begin taking key discovery. Critically, D&O agreed to the operative case schedule based on an expectation of reasonable cooperation from Defendants. Although Defendants made the vague as-sertion in the Joint 26(f) Report that "discovery into the finances of all Defendants, and of Gredale, LLC *should* be delayed until after the Superior Court's decision on April 15 2025, in order to respect the Superior Court's stay" (ECF No. 64 at 8-9, emphasis added), ultimately Defendants neither filed a motion requesting that this Court impose its own a stay, nor limited its discovery objections strictly to "discov-ery into finances." Instead, Defendants and Gredale unilaterally imposed their own stay and obstructed discovery without first seeking permission from this Court.

The initial discovery D&O sought was foundational and necessary in order to progress to further areas of discovery. Ness Decl., Ex. 3. But D&O's diligent efforts were stonewalled by Defendants' and Gredale's refusal to provide

documents or testimony that they unilaterally deemed to be preempted by the state court stay, which, in their view, encompassed all issues in dispute in this case. Specifically, the state court stay was used as a basis for refusing to disclose the identities of entities operating out of Gredale's headquarters (Ness Decl., Ex. 3, Request No. 12); refusing to provide information regarding the identify of Gredale's employees at different points in time (intended to identify witnesses for additional discovery and relevant to alter ego claims) (*id.*, Request Nos. 13-15); refusing to produce a settlement agreement relating to Gredale's lease of its headquarters (from which all of Defendants operate and apparently do not compensate Gredale) (*id.*, Request No. 10); refusing to produce documents relating to the alleged sham instruments filed by Gwen Lorber and EUHC Holdings in relation to the Dona Rosa Property (*id.*, Request Nos. 8-9); and refusing to produce documents sufficient to show any consideration purportedly received for the transfer of the Dona Rosa Property—a potentially dispositive issue (*id.*, Request No. 1).

Notably, the sole and exclusive basis for Defendants/Gredale's objection to the foregoing categories of discovery was a stay in the State Proceeding, Ness Decl., Ex. 4, thereby waiving all other objections they might have raised. See *McCoy v. Southwest Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002) ("Rule 45(c)(2)(B) requires the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a 'game.'") (cleaned up) (quoting *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir.1998)).

Moreover, had Defendants made clear to D&O and this Court at the time the parties were negotiating a proposed case schedule that they intended to object to ***all*** discovery in this case based on an extra-jurisdictional application of the state court stay, D&O would never have agreed the relatively fast-paced Case Schedule, which naturally assumed that discovery would proceed in the ordinary course. Defendants led D&O to believe that Defendants might file a motion for a stay, which D&O would oppose, and that, absent an Order from this Court, discovery would progress.

Moreover, Defendants' counsel insisted that D&O hold off on discovery or a motion to compel until after a ruling on Gredale's Renewed Motion to Vacate, promising that documents and testimony would promptly be forthcoming if that motion were denied. D&O thus decided to wait before beginning the motion to compel process in this Court in the interest of not burdening this Court unnecessarily and in light of the potential of getting a resolution from the state court that would moot the issue by eliminating Defendants/Gredale's sole basis for objection. But even after Gredale's Renewed Motion to Vacate was denied, and in direct contradiction to what they previously represented, Defendants continued to resist discovery even after that point.

Given Defendants' counsel's representation regarding plans to file yet another *ex parte* request for a stay and a Second Renewed Motion to Vacate, D&O's plan was to use that occasion to request that the Superior Court make clear that it does not intend any stay to affect discovery in this case. D&O believed that such a clarifying ruling by the Superior Court would foreclose Defendants' overreaching use of the stay and potentially obviate the need for a motion to compel.

Ultimately, the Superior Court did as D&O requested and added language to its more recent stay order clarifying that the scope of the stay is not intended to intrude on discovery in this case. Ness Decl., Ex. 8 at 2. That express limitation on the stay appears to have been instrumental in convincing Defendants/Gredale to finally withdraw their objections and commit to produce documents. Ex. 7 (7/18/2025 Newhouse Emails).

Accordingly, D&O has acted diligently and with the sole goal of advancing discovery in the face of non-cooperative parties. And D&O would never have committed to the current case schedule had it known of Defendants' intention from the start to evade discovery entirely without first seeking permission from this Court.

Despite their obvious and substantial role in causing the need for the present Motion, Defendants have indicated that they will argue in opposition to this Motion

that D&O was not diligent enough to warrant relief under Rule 16 because it should have acted sooner after the April 21, 2025, ruling from the Superior Court to move to compel Defendants/Gredale's compliance with their discovery obligations. To start with, D&O should not be rewarded for its own dilatory and obstructive conduct by successfully running down the clock in this case. *C.f. Mountain Pride Farms, Inc. v. Dow Chem. Co.*, 95 F.R.D. 400, 403 (S.D.N.Y. 1982) ("Where a delay … is caused by the opponent's failure to cooperate with discovery, it is not in the interests of justice to allow the opponent to rely on the delay in opposing the motion.").

More importantly, Defendants are wrong. The only possible way to have obtained the necessary discovery earlier would have been to obtain an order from this Court on a motion to compel. Had D&O acted sooner to initiate a motion to compel, say within two weeks of the Superior Court's April 21, 2025 denial of the Renewed Motion to Vacate, that would have meant the motion to compel process in this Court would have only ***started*** at that point; it would likely have taken at least 30-60 days just to get an order compelling production, and ultimately we would likely end up in the same place we are now: *i.e.*, unable to meet the case deadlines as a result of Defendants' obstruction. In other words, a 90-day extension would have been necessary regardless of whether a motion to compel were filed earlier or not. The ***only*** substantial difference with that alternative approach is that, in addition to the present Motion, D&O would have been forced to expend substantial resources and burden this Court with an unnecessary discovery dispute.

D&O's strategic choice to obtain a limiting ruling from Superior Court to undercut Defendants' sole basis for obstructing discovery in this case was therefore effective in compelling Defendants/Gredale to finally agree to produce documents and, far from showing a lack of diligence, instead was a part of D&O's continued diligent efforts to progress this case.

### 2. Any claim of prejudice is belied by Defendants' agreement in principle to the 90-day extension.

When asked to stipulate to the extension, Defendants' response was that they *would* stipulate to the extension, but *only* if D&O would agree to stay "all financially related discovery." Ness Decl., Ex. 7 (7/14/25 2:54 p.m. Newhouse Email). Although this unworkable strings-attached offer was rejected, it makes clear that Defendants have no substantive objection to extending deadlines here. Instead, Defendants used the prospect of a stipulation to such an extension, which would have obviated the need for this Motion, as an opportunity to continue to avoid discovery. Defendants' agreement in principle to a 90-day extension, and subsequent commitment to produce documents, belies any claim of prejudice and further underscores that there is good cause for a 90-day extension here.

### 3. Trial is not imminent.

Trial is presently set for February 3, 2026—more than six months from the date of this filing. Moving the trial date by approximately 90 days, along with the corresponding pretrial deadlines, is therefore appropriate and will not prejudice any party.

### 4. An approximate 90-day extension of each pretrial deadline is necessary to enable a full and fair presentation of the claims.

Each of the deadlines in this case is no longer realistic. As to the deadline to hear a motion to amend the pleadings and add parties, presently set for July 30, 2025, it is no longer possible to do so under the current schedule. Defendants/Gredale failed to provide the information necessary to determine whether other parties were involved in Gredale's asset-stripping scheme, and whether other claims (specifically including claims related to a certain instrument recorded by a Gredale affiliate called EUHC Holdings) are supported by evidence. The document requests targeting issues pertinent to potential amendments included documents that would show all entities operating out of Gredale's headquarters and any purported debt owed by Gredale to EUHC, which are both relevant to determining whether there

are other parties that need to be joined in this case. To be clear, Defendants' counsel stated that party witnesses would be instructed not to provide this information at their depositions and thus D&O could not have obtained this information substantially earlier.

The 90-day extension is also necessary as to the discovery deadline. The current deadline is September 12, 2025. Even with Defendants/Gredale's recently changed position on discovery, it is unlikely that Defendants will produce all requested documents before mid-August 2025. Whatever production is made will likely lead to additional follow-up requests and the discovery further areas for investigation. Additional time will also be needed to review whatever documents are ultimately produced, and for party and third-party depositions regarding those documents. Of course, there may also be motions to compel involving Defendants or third parties. This cannot reasonably be accomplished by September 12, and there is thus there is good cause for the 90-day extension of that deadline.

The delay in discovery, in turn, affects the dates by which experts will be prepared to finalize their reports. D&O intends to utilize experts for forensic accounting and damages. Given the shift in discovery deadlines and the current lack of evidence necessary to enable experts to develop their opinions, it follows that the expert deadlines should also be extended.

The same is true of the motions deadlines, and all remaining deadlines, as those are tied to the expected completion of discovery, expert disclosures, etc.

In light of the foregoing, an approximately 90-day extension is appropriate here. *E.g.*, *Welter*, 2024 WL 5317266, at *2 (holding that an approximately 90-day extension was proper under similar circumstances).

## IV.  CONCLUSION

For the foregoing reasons, D&O respectfully requests that the Motion be granted.

Dated: July 20, 2025

Respectfully submitted,

NESS PLLC

*/s/ Eliyahu Ness*

Eliyahu Ness
SBN: 311054
12100 Wilshire Blvd.
Suite 800
Los Angeles, CA 90025
(213) 294-4322
eness@nesslegal.com
Attorneys    for    Plaintiff    D&O
TRADECO INC.

## CERTIFICATE OF COMPLIANCE WITH L.R. 11.6

The undersigned certifies that this brief contains 5297 words, which complies with the word limit of L.R. 11-6.1.

Date: July 20, 2025.

*/s/ Eliyahu Ness*

Eliyahu Ness

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O MOTION TO MODIFY SCHEDULING ORDER

# CERTIFICATE OF SERVICE

On July 20, 2025, I served the foregoing Notice of Motion and Motion to Modify Scheduling Order on all counsel of record by filing it using the Court's CM/ECF system.


Dated: July 20, 2025

*s/ Eliyahu Ness*

Eliyahu Ness

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O MOTION TO MODIFY SCHEDULING ORDER